IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KAREN BLUM et al.                  *
                                   *
v.                                 *
                                   *   Civil Action No. WMN-12-57
FREMONT INVESTMENT AND             *
LOAN et al.                        *
                                   *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

This action relates to Plaintiffs Karen and Michael Blum's

purchase of their home in Aberdeen, Maryland in 2004.

Plaintiffs engaged Defendant Allied Home Mortgage Capital

Corporation (Allied), a mortgage broker, to obtain a suitable

mortgage.  Allied presented Plaintiffs with a mortgage loan

offered by Defendant Fremont Investment and Loan (Fremont) and

Plaintiffs applied for and were approved for that loan.

Plaintiffs allege that the Good Faith Estimate that was provided

to them prior to settlement contained several incorrect fees and

thus violated the federal Truth in Lending Act (TILA).

Plaintiffs further allege that Fremont improperly used their

gross income rather than their net income to qualify them for

the loan and that they were pushed into a risky subprime loan

with a 5.5% interest rate for the first 24 months, but a 12.5%

interest rate thereafter.  Plaintiffs argue that, as a result of

the actions of "Defendants," they were "force-fed" a mortgage

that Defendants "knew was set to default from the genesis."

Compl. ¶ 73.

Plaintiffs entered into the mortgage by executing a

Promissory Note (the Note) payable to Fremont and dated October

1, 2004.  Compl., Ex. A at 2.  To secure the Note, Plaintiffs

also executed a Deed of Trust on that same date with Fremont as

the beneficiary and the Mortgage Electronic Registration System,

Inc. (MERS), as the nominee.  Id. at 1.  According to the

Complaint, Defendant Saxon Mortgage Services, Inc. (Saxon

Mortgage) was appointed as a servicer of the loan sometime after

closing and Plaintiffs opine that "there is a strong possibility

that the Subject Loan was securitized into the Saxon Asset

Securities Trust 2005-1."  Compl. ¶¶ 30, 32.  Plaintiffs also

allege that the Note was subsequently securitized into a Real

Estate Mortgage Investment Conduit.  Plaintiffs defaulted on the

Note and received a "Notice of Default" on or about June 24,

2008.  Compl. ¶ 37.

Plaintiffs, proceeding pro se, filed this action on January

5, 2012.  Although the exact nature and the bases for their

claims are less than clear,[1] Plaintiffs argue that none of the

---

[1] On the Civil Cover Sheet, Plaintiffs claim that the Complaint
raises a "federal question."  The only federal statute that is
referenced in the Complaint is TILA.  As explained below, any
TILA claim is clearly time barred.  Plaintiffs make an oblique
reference to the "Constitutional right of being granted the
opportunity to confront their accuser" and complain that the

Defendants are "real parties in interest" and "lack standing to

enforce" the Note.  Id. at 51.  Plaintiffs also seem to argue

that the securitization of the Note resulted in its discharge.

Id. at ¶¶ 62-64.  In addition, Plaintiffs also challenge MERS's

authority to appoint a successor trustee.  Id. ¶ 72.  As relief,

Plaintiffs seek an order declaring: the Deed of Trust to be null

and void, the Note to be fully discharged, that Plaintiffs are

the rightful and sole holders of title to the property, and that

Defendants are enjoined from claiming any interest in the

property.

Although Plaintiffs have yet to file any proof of service

as to any Defendant, they represent in their motion for default

that MERS was served on January 27, 2012, Saxon Mortgage and

Defendant Deutsche Bank and Trust Co., Inc. (Deutsche Bank), on

January 30, 2012, and Fremont on February 3, 2012.  See ECF No.

7 at 2.  They make no representation as to when or if Defendant

Saxon Funding Management, Inc. (Saxon Funding), or Allied were

served.  While reserving its right to contest that it was

properly served, on February 8, 2012, Allied filed a motion to

compel arbitration, to dismiss, or in the alternative, to stay

this action pending arbitration.  ECF No. 4.  Saxon Mortgage,

---

Notice of Default states that it originated from "Other
Institutional Lenders."  Compl. ¶¶ 78, 79.  The Confrontation
Clause, contained in the Sixth Amendment, however, relates to
criminal proceedings.

Saxon Funding and MERS filed a motion to dismiss on February 23, 2012.  ECF No. 5.  Without mentioning these pending motions, Plaintiffs moved for default on March 5, 2012, against Fremont, Saxon Mortgage, Deutsche Bank, and MERS.  ECF No. 7.  Shortly thereafter on March 14, 2012, Deutsche Bank filed a motion for leave to file a responsive pleading explaining that it had failed to timely respond to the Complaint due to some confusion as to how the defense of this matter would be handled.  ECF No. 9.  With that motion, Deutsche Bank attached a motion to dismiss in which it adopted the arguments made by Saxon Mortgage, Saxon Funding, and MERS.  ECF No. 9-2.

The Court turns first to Plaintiffs' motion for default and Deutsche Bank's motion for leave to file.  Preliminarily, as noted above, Plaintiffs have yet to file any affidavit of service.  Assuming, however, that Defendants were served on the dates provided by Plaintiffs in their motion for default, the Court finds that the entry of default is not warranted.  When considering a motion for default that has been opposed, a court will apply the standard for setting aside a default that had been entered.  Under Rule 55(c), an entry of default can be set aside "for good cause."  In considering whether there is good cause, a court considers "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, [and] the prejudice to the party . . . ."  Colleton Preparatory

Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). Here, even assuming that Plaintiffs have provided accurate dates of service, Defendants acted with reasonable promptness, have proffered several meritorious defenses as explained, infra, and Plaintiffs suffered no prejudice from the brief delay. In light of the oft expressed "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits," id., the Court concludes that that Plaintiffs' motion for default should be denied and Deutsche Bank's motion for leave to file a responsive pleading should be granted.

In its motion to compel arbitration or to dismiss, Allied points to an Agreement for the Arbitration of Disputes signed by Plaintiffs in conjunction with their application for a loan. That agreement provides that "any dispute, regardless of when it arose," shall be settled by arbitration. See Attachment to Declaration of Jeanne Stell. "Dispute" is defined in the agreement as "any claim or controversy of any nature whatsoever arising out of or in any way related to the loan." Id. Citing the strong federal policy in support of arbitration agreements, Allied argues that any claims against it must be submitted to arbitration. ECF No. 4 at 6 (citing, inter alia, Dean Witter Reynolds Inc. v. Boyd, 470 U.S. 213 (1985)). Plaintiffs did not oppose this motion and it will be granted.

The motion to dismiss filed by Saxon Mortgage, Saxon Funding, and MERS, in which Deutsche Bank subsequently joined, raises four primary arguments. First, they note that Plaintiffs' failure to distinguish between Defendants renders the Complaint deficient under the federal pleading standard. See Fed. R. Civ. P. 8(a). As to some Defendants, there are few clues as to what it is they are alleged to have done. For example, Deutsche Bank is only mentioned in one paragraph of the Complaint where it is simply identified as the "indentured trustee" of Saxon Asset Securities Trust 2005-1. The only allegation related to MERS beyond its identity as the "Beneficiary of the mortgaged Subject Property" is the inaccurate statement that it did not have the authority to appoint a successor trustee.[2]

Second, Defendants note that Saxon Mortgage took the Note as a bona fide purchaser for value. While Plaintiffs appear to allege that Saxon Mortgage is the current holder of the Note, there is no allegation that any Defendant subsequent to Fremont took possession of the Note with knowledge of any wrongdoing regarding the underlying loan. As such, Saxon Mortgage is

_____

[2] The Deed of Trust specifically provides that "MERS (as nomineee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling [the Deed of Trust]." Compl., Ex. A at 3.

protected as a bona fide purchaser.  See Washington Mutual Bank

v. Homan, 974 A.2d 376, 396 (Md. 2009).

Third, Defendants correctly note that, to the extent that

Plaintiffs are asserting a claim under TILA, 28 U.S.C. § 1640 et

seq., that claim would be time barred.  While TILA provides that

the failure to accurately make certain disclosures prior to

settlement can give rise to a private cause of action and a

right to recission, that cause of action must be brought within

three years of the date of the consummation of the transaction.

15 U.S.C. § 1635(f).  The closing on the subject mortgage was in

2004 and Plaintiffs did not file suit until 2012.  To the extent

that Plaintiffs might rely on equitable tolling based upon the

fraudulent concealment of their cause of action, Plaintiff would

have discovered the alleged fraud, at the latest, when the

interest rate jumped to 12.5% in 2006 and their TILA claim would

still be untimely.

Finally, Defendants respond to Plaintiffs' contention that

Defendants "lack standing" to enforce the Note.  This Court

faced a similar challenge from the plaintiff in Suss v. JP

Morgan Chase Bank, N. A., Civ. No. WMN-09-1627, 2009 WL 2923122

(D. Md. Sept. 10, 2009).  In rejecting that argument, this Court

noted that,

> [m]any of the cases cited by Plaintiff are foreclosure
> actions and those cases do stand for the proposition
> that, in order to have standing to bring a foreclosure

    action, a party must demonstrate that it is the holder
    of the mortgage note.  Here, of course, Defendant is
    not seeking affirmative relief but is simply defending
    a suit brought against it and, thus, Plaintiff's
    "standing" arguments are misplaced.

2009 WL 2923122 at *4 (citations omitted, emphasis in original).

In its opposition to this motion,[3] Plaintiffs largely ignore

the arguments made by Defendants.  Instead, Plaintiffs proffer a

new argument, one that was rejected by this Court in a second

opinion in the Suss action.  In arguments echoed by Plaintiffs

here, Suss "[f]irst [] challenge[d] the legitimacy of MERS,

arguing that it has no authority to transfer any beneficial

interest in mortgage loans and that any internal

transfer/assignment of a note by MERS is void.  Second,

Plaintiff contend[ed] that the securitization of the Note

rendered it unenforceable."  Suss v. JP Morgan Chase Bank, N.A.,

2010 WL 2733097 (D. Md. July 9, 2010) at *4.  This Court found

merit in neither argument.  As to the first, the Court cited to

several state and federal cases that "have considered the issue

[and] have found that the [MERS] system of recordation is proper

and assignments made through that system are valid."  Id. at *5.

As to the second, the Court found the plaintiff's securitization

arguments to be without factual support.  In that case, like the

---

[3] Plaintiffs also filed a motion for leave to file a surreply.
ECF No. 14.  The proposed surreply, however, merely repeats the
same arguments made in the opposition and the motion for leave
to file a surreply will be denied.

instant case, the original Note specifically permitted the transfer of rights under the Note, including servicing rights. See Note ¶ 20.

While certainly sympathetic to Plaintiffs' plight, the Court concludes that they have no claims that can be properly brought before this Court. Plaintiffs request that the Court grant them leave to file an amended complaint should it reach the conclusion that their claims are insufficiently pled. As the only possible federal claim, the TILA claim, is clearly time barred (and Plaintiffs offer no argument to the contrary), this Court would have no subject matter jurisdiction over any amended complaint. Accordingly, leave to amend will not be granted. A separate order will issue.

                                    _____/s/_____
                                    William M. Nickerson
                                    Senior United States District Judge

DATED: June 12, 2012.